**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JERRY LAWLER,** as father, next friend and Personal Representative/Administrator of the Estate of **BRIAN CHRISTOPHER LAWLER,** deceased,<br><br>      **Plaintiff,**<br><br>v.<br><br>**HARDEMAN COUNTY, TENNESSEE; JOHN DOOLEN; LEONARD BROWN; ELLEN FUTRELL; WILLIAM GONZOLEZ; and JUDY WIGGINS,**<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 1:19-cv-01174-STA-jay** |

---

### ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

---

Before the Court is Defendants' Partial Motion to Dismiss, filed September 16, 2019. (ECF No. 11.) Plaintiff Jerry Lawler originally filed this lawsuit in the Circuit Court of Hardeman County, Tennessee, pursuant to 42 U.S.C. § 1983 and state law, against Hardeman County, Tennessee, John Doolen, Leonard Brown, Ellen Futrell, William Gonzalez, and Judy Wiggins. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. Defendants now move to have Plaintiff's state law claims brought under the Tennessee Governmental Tort Liability Act ("TGTLA") and punitive damages claim against Hardeman County dismissed. (*Id.*) Plaintiff has filed a response to the Motion (ECF No. 15), and Defendants have filed a reply to the response. (ECF No. 16.) For the reasons discussed below, Defendants' Motion is **GRANTED**. Accordingly, the state law claims brought under the TGTLA and punitive damages claim against Hardeman County are hereby **DISMISSED**.

<u>BACKGROUND</u>

On July 7, 2018, Brian Lawler ("Decedent") was arrested for driving under the influence and other related charges. (Complt. ¶ 19, ECF No. 1-2.) That day, Defendant Ellen Futrell booked and processed Decedent into the Hardeman County Jail ("Jail"). (*Id.* at ¶ 20.) Decedent indicated that he had two prior suicide attempts, a history of depression and anxiety, a major depressive mood disorder diagnosis, and took prescription medicine for depression, anxiety, pain, and inflammation. (*Id.* at ¶ 21.) Despite his indication, the Jail's computer system did not reflect any attempted suicides because they occurred more than two years prior. (*Id.* at ¶ 22.) Defendant Futrell did not include a note in the system alerting other Jail staff to the two prior suicide attempts. (*Id.* at ¶ 22.)

Plaintiff met with Defendant John Doolen after Decedent's arrest, and Defendant Doolen assured him that Decedent would receive the drug and alcohol treatment he needed while incarcerated. (*Id.* at ¶ 26.) Based on this meeting, Plaintiff did not bond Decedent out of Jail. (*Id.*) Decedent did not see a doctor or mental health professional or receive any treatment for his drug and alcohol issues during his incarceration. (*Id.* at ¶ 25, 27.) Decedent did not receive all of his medications during his incarceration. (*Id.* at ¶ 28.)

On July 28, 2018, another inmate assaulted Decedent. (*Id.* at ¶ 29.) Decedent sustained a wound above his eye and told Jill Shearon, a licensed nurse, and Defendant Judy Wiggins that he thought he had a concussion. (*Id.* at ¶ 29.) Decedent requested to be sent to the hospital but was placed in solitary confinement and told by either Defendant Wiggins or Ms. Shearon that he would be seen by a doctor on Monday, two days later. (*Id.* at ¶ 30.) Defendants did not re-evaluate Decedent for suicide risk and did not remove Decedent's shoes and shoe laces. (*Id.* at ¶ 30–31.) The solitary confinement cell had "numerous large bolts" along the upper portion of the wall. (*Id.*

at ¶ 32.)  Throughout the day, Decedent asked to be taken to the hospital and protested his placement in solitary confinement.  (*Id.* at ¶ 34.)

At approximately 6:30 p.m. on July 28, 2018, Defendant William Gonzalez passed Decedent's cell and observed what he initially thought was Decedent "standing on a bench in his cell with a towel over his face."  (*Id.* at ¶ 36.)  Defendant Gonzalez took the trash out, returned to the jail, and observed Decedent in the same position, so he called for assistance.  (*Id.* at ¶ 37.) Defendant Wiggins responded, and they realized that Decedent had hung himself from one of the large bolts by his shoe laces.  (*Id.*)  Decedent was not breathing and was unresponsive by the time Defendants Gonzalez and Wiggins cut him down with "children's scissors."  (*Id.* at ¶ 38.) Decedent was pronounced dead at approximately 3:40 p.m. on July 29, 2018.  (*Id.* at ¶ 45.)  "The cause of death was anoxic encephalopathy due to hanging."  (*Id.*)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

## ANALYSIS

Plaintiff alleges that Defendants violated the civil rights of his son, the Decedent, while he was incarcerated in the Hardeman County Jail. Plaintiff claims that Defendants were "deliberately indifferent to Brian's medical and/or mental healthcare needs," which resulted in his death by suicide. (Complt. ¶ 54, ECF No. 1-2.) Plaintiff further alleges that Defendant Hardeman County implemented unconstitutional policies regarding the way in which its jail generally handled inmates with mental health issues, medical/mental health treatment for inmates, and monitoring of inmates "in deliberate indifference to the rights of arrestees or pretrial detainees." (*Id.* at ¶¶ 39–40, 56–60.) Defendants do not challenge these claims in their Motion to Dismiss.

Rather, Defendants challenge Plaintiff's alternative pleadings. Plaintiff asserts, in the alternative, that Defendant Hardeman County is vicariously liable for the alleged negligence of its employees under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, *et seq.*, and for its own negligent hiring, training, retention, and supervision of its employees. (*Id.* at ¶ 74–93.) Moreover, Plaintiff contends, in the alternative, that Defendant Hardeman County is liable for the "deviation of the applicable standard of care on the part of the licensed healthcare providers that it employed" under the Tennessee Healthcare Liability Act ("THLA"), Tenn. Code Ann. § 29-26-101, *et seq.* (*Id.*) Plaintiff finally claims that Defendant Hardeman County recklessly allowed a solitary confinement cell in its jail to have "numerous protruding bolts in the upper portion of the wall." (*Id.* ¶ 32; ECF No. 15 at p. 13.)

Defendant Hardeman County moves to dismiss Plaintiff's state law claims on the ground that it retains immunity from suit pursuant to the TGTLA. (ECF No. 11-1 at p. 3–7.) Defendants argue that Tennessee Code Annotated Section 29-20-205(2), the civil rights exception, preserves governmental entities' immunity from suit for claims of negligence that arise out of the same facts and circumstances as civil rights claims. (*Id.* at 4–6.) Defendants also contend that Plaintiff's claims against Hardeman County for negligent hiring, training, retention, and supervision of its employees fail under the TGTLA because Hardeman County retains immunity under the discretionary function exception, Tenn. Code Ann. § 29-20-205(1). (*Id.* at 6–7.) Defendants finally argue that Plaintiff does not state a claim regarding the bolts in the solitary confinement cell under Tennessee Code Annotated § 29-20-204.

The Court will first briefly address Defendants' argument that, under § 1983 and Tennessee law, punitive damages are not recoverable against Hardeman County. The Court will then address Defendants' argument that Hardeman County is immune from Plaintiff's state law claims under the TGTLA.

## I.     Punitive Damages

Defendant Hardeman County moves to dismiss Plaintiff's claim for punitive damages on the ground that punitive damages are not recoverable against a municipality under § 1983 and state law. (ECF No. 11-1 at p. 7–8.) Plaintiff does not respond to this argument. As discussed below, all state law claims against Defendant Hardeman County are dismissed, leaving only the § 1983 claim. It is well-settled that punitive damages are not recoverable under § 1983 against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, Plaintiff's claim for punitive damages against Hardeman County is **DISMISSED**.

## II.    Sovereign Immunity

"No party may bring suit against 'the State' except 'in such a manner and in such courts as the Legislature may by law direct.'" *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (quoting Tenn. Const. art. I, § 17).  Under the TGTLA, a governmental entity defendant is generally subject to suit for civil claims sounding in negligence, with certain enumerated exceptions. *Id.*  Those exceptions include any injuries that may arise out of an allegation of civil rights violations and discretionary functions. *Id.* § 29-20-205(1)–(2).  Thus, sovereign immunity continues to apply in those circumstances. *See Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010).

### A.  *Civil Rights Exception*

The civil rights exception has been construed to include 42 U.S.C. § 1983 claims. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (2010); *Allred v. Rodriguez*, 2019 WL 2603336 at *2 (W.D. Tenn. June 25, 2019).  A negligence claim falls under the civil rights exception where "the same circumstances giv[e] rise to both the negligence and civil rights claims." *Partee v. City of Memphis*, 449 F. App'x. 444, 448 (6th Cir. 2011) (alteration in original); *Schalk v. City of Memphis*, 2015 WL 11019255, at *14 (W.D. Tenn. Aug. 13, 2015) (citing *Johnson*, 617 F.3d at 872) ("To determine whether the civil rights exception – and therefore governmental immunity – applies, the Court must determine whether the essence of the suit remains a civil rights violation . . .").  It is well-settled that a "plaintiff cannot circumvent a defendant's immunity by couching its civil rights claim as one of negligence." *Tinkle v. Dyer County*, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018); *see also Johnson*, 617 F.3d at 872; *Partee v. City of Memphis*, 449 Fed. App'x 444, 448 (6th Cir. 2011).

Plaintiff first argues that, pursuant to Rule 8 of the Federal Rules of Civil Procedure, he may "allege and prove alternative theories of liability." (ECF No. 15 at p. 6.) While Plaintiff is correct that Rule 8(d)(3) specifically provides that a party may state as many claims as it has, regardless of consistency, this Court, and others, have consistently held that, if a plaintiff alleges that a defendant violated his civil rights, he cannot alternatively bring a claim under the GTLA. *See e.g.*, *Allred v. Rodriguez*, 2019 WL 2603336 (W.D. Tenn. June 25, 2019); *Tinkle*, 2018 WL 6840155, at *2; *Stewart v. City of Memphis*, 2017 WL 627467, at *8 (W.D. Tenn. Feb. 15, 2017) (finding that the plaintiffs' state law claims arose out of the same circumstances giving rise to their § 1983 civil rights claims, and, therefore, those claims were barred by the TGTLA's retention of immunity for injuries arising from civil rights); *Hargrow v. Shelby County*, 2014 WL 3891811, at *5 (W.D. Tenn. Aug. 7, 2014) (rejecting the plaintiff's argument that she had made alternative claims sounding in civil rights and negligence and, thus, the TGTLA did not bar her state law claims because she had stated "no facts in the Complaint for tort violations other than those underlying her § 1983 claims").

Plaintiff also argues that "[t]here is a separate factual basis for each set of Plaintiff's allegations" but does not identify any facts supporting the negligence and health care liability claims that do not also support one of the grounds for his § 1983 civil rights claim. These claims arise from the events leading up to and following Decedent's suicide. Plaintiff points to the same facts to support his § 1983 claim that he uses to bolster his negligence and health liability claims. Plaintiff even states in the section of his Complaint wherein he alleges Hardeman County is vicariously liable for the negligence of its employees,

> If it is shown that Defendants did not act with deliberate indifference in this case or otherwise violate Brian's civil rights, Plaintiff would assert that they were, at minimum, negligent by . . . failing to recognize that Brian was in danger and they altogether failed to take any action to prevent this tragic event.

(Compl. ¶ 83.)  Consequently, the Court finds that Plaintiff's negligence and health care liability claims against Defendants arise from the same circumstances that give rise to his § 1983 claim.

Plaintiff makes one final argument that his health care liability claim should not be dismissed, asserting that the TGTLA "removes immunity from Hardeman County for employee health care providers acting . . . in the scope of their employment."  (ECF No. 15 at p. 7.)  Plaintiff reasons that because the Tennessee Civil Justice Act amended the THLA's definition of "healthcare liability action" to include "claims against the state or a political subdivision thereof," these types of cases are no longer subject to the civil rights exception of the TGTLA.  Ultimately, however, as Defendants point out, a health care liability lawsuit brought against a governmental entity is still subject to the enumerated exceptions of the TGTLA.[1]  *See e.g.*, *Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 42–43 (Tenn. 2013); *Clary v. Miller*, 546 S.W.3d 101, 107 (Tenn. Ct. App. 2017).  Thus, the health care liability claim in this case is subject to the civil rights exception.

Therefore, Defendant Hardeman County retains its sovereign immunity with respect to Plaintiff's claims that it is vicariously liable for the negligence of its agents and employees under the TGTLA and THLA, and these claims are **DISMISSED**.

B.  *Discretionary Functions Exception*

Plaintiff's TGTLA claim against Defendant Hardeman County for negligent hiring, training, retention, and supervision falls squarely into the TGTLA's exception to the waiver of immunity for discretionary acts.  Section 29-20-205 of the TGTLA provides in relevant part:

---

[1] The only difference is that a health care liability lawsuit against a governmental entity must *also* comply with the pre-suit notice requirements of the THLA, but that requirement is "offset" by the 120-day extension of the GTLA statute of limitations.  *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 55 (Tenn. Ct. App. 2015).

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

"The discretionary functions exception 'recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision' and therefore allows the government to operate without under interference by the Court." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992) (citation omitted).

In *Bowers*, the Tennessee Supreme Court adopted the "planning-operational" test to determine whether an act fell within the discretionary function exception. *Id.*, 826 S.W.2d at 430. Under this test, "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* (citing *Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979)). Planning decisions, the court in *Bowers* ruled, often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *Id.*, 826 S.W.2d at 431.

*Peatross v. City of Memphis*, 2015 WL 13021901 at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016) (finding that the screening, hiring, training, and supervision of the officers "clearly" fell within the discretionary exception).[2]

---

[2] *See also Savage v. City of Memphis*, 620 F. App'x. 425, 429 (6th Cir. 2015) (finding that "the sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary function exception"); *Tinkle*, 2018 WL 6840155, at *2 (finding that the "Plaintiffs' GTLA claims against Defendant Dyer County for negligent hiring, training, retention, and supervision fall into the GTLA's exception to the waiver of immunity for discretionary acts"); *Uhuru v. City of Memphis*, 2008 WL 4646156, at *12 (W.D. Tenn. Oct. 17, 2008) (finding that the allegations in the complaint that the Memphis Police Department and its director "failed to adequately screen, train, investigate, and discipline its officer defendants" were not sufficient "to raise more than a speculation that the actions of the City of which the Uhurus complain are not discretionary functions subject to immunity"); *Minor v. City of Memphis*, 2006 WL 889333 at *4 (W.D. Tenn. Mar. 30, 2006) ("The question of how thoroughly to train officers or discipline them, like the question of how to discipline combative employees in *Limbaugh*, is a policy determination.

On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation."

*Bowers*, 826 S.W.2d at 431 (quoting *Aslakson v. United States,* 790 F.2d 688, 692 (8th Cir.1986)).

Here, Plaintiff points to several alleged policies, or lack thereof, that were the "moving force" behind the alleged constitutional violations of Defendant Hardeman County's agents and employees—plead in the alternative as negligent actions. (Compl. ¶ 39, 40, 56, 58, ECF No. 1-2.) Plaintiff argues that he is not challenging "the training, hiring, or supervision policies under the GTLA, but [he does] challenge the actual acts or the execution of policy." (emphasis in original) (ECF No. 15 at p. 17.) However, Plaintiff does not allege that Hardeman County or any employee or agent engaged in any "ad hoc" courses of action that did not comport with existing policies. The implementation of these alleged unconstitutional policies would clearly qualify as a planning decision, allowing Hardeman County to retain immunity under the discretionary function.

Plaintiff points specifically to his allegation that Defendant Doolen provided assurances that Decedent would receive drug and alcohol treatment, but Decedent did not receive such treatment. (ECF No. 15 at p. 16, 18.) However, Defendant Hardeman County's decisions regarding the provision of drug and alcohol treatment to inmates is most assuredly a planning or policy-making decision that falls within the discretionary-function exception. This Court finds that Plaintiff has not alleged grounds for a negligence claim against Defendant Hardeman County

Consequently, it receives discretionary function immunity from tort liability under the TGTLA.").

10

based on facts or circumstances that fall outside the discretionary function exception to the waiver of immunity.

Therefore, Defendant Hardeman County retains its sovereign immunity with respect to Plaintiff's claim that it negligently hired, trained, retained, and supervised its agents and employees under the TGTLA, and this claim is **DISMISSED**.

C. *Premises Liability*

Plaintiff's TGTLA claim that Defendant Hardeman County recklessly allowing a solitary confinement cell in its jail to have "numerous protruding bolts in the upper portion of the wall" is governed by Tennessee Code Annotated § 29-20-204. It provides:

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

This section of the GTLA essentially "codifies the common law obligations of owners and occupiers of property embodied in premises liability law, which generally requires the exercise of ordinary care and diligence in maintaining the premises, including an affirmative duty to protect against dangers of which one knows or which, with reasonable care, might discover." *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002). However, "[w]hether a particular site is defective, unsafe or dangerous is a question of fact." *Id.* (citing *Helton v. Knox County*, 922 S.W.2d 877 (Tenn. 1996)).

Here, Plaintiff alleges that "[t]he cell where Brian was placed contained numerous large bolts protruding from the upper portion of the wall that were perfectly situated to serve as an anchor for a ligature." (Compl. ¶ 32.) However, Plaintiff does not allege that the bolts were defective or

in any way dangerous in and of themselves.  Plaintiff alleges Decedent utilized his shoe laces as a ligature, anchored by the bolts, to commit suicide.  (*Id.* ¶ 37.)  Plaintiff does not allege that any similar incidents have occurred nor that the Defendants had any notice that these bolts could be used in that manner.

Therefore, Defendant Hardeman County retains its sovereign immunity with respect to Plaintiff's claim under Tennessee Code Annotated § 29-20-204, and this claim is **DISMISSED**.

<u>CONCLUSION</u>

The Court finds that, Defendant Hardeman County retains sovereign immunity from suit with respect to Plaintiff's state law claims.  Thus, Defendant's Motion is **GRANTED**.  The causes of action still pending before the court in the above titled matter are as follows:  the § 1983 claims against Defendant Hardeman County, Defendant Doolen in his individual and official capacities, Defendant Brown in his individual and official capacities, Defendant Futrell, Defendant Gonzalez, and Defendant Wiggins; and the breach of promise claim against Defendant Doolen.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 25, 2019.