IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JERRY LAWLER, as father, next friend and Personal Representative/Administrator of the Estate of BRIAN CHRISTOPHER LAWLER, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>HARDEMAN COUNTY, TENNESSEE; JOHN DOOLEN; LEONARD BROWN; ELLEN FUTRELL; WILLIAM GONZALEZ; AND JUDY WIGGINS,<br><br>    Defendants. | No. 1:19-cv-01174-STA-tmp |

### ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S PROPOSED EXPERT GEORGE A. BARRETT

Before the Court is Defendants' Motion to exclude the testimony of Plaintiff's Proposed Expert George A. Barrett (ECF No. 68) filed on June 1, 2022. For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

On July 7, 2018, a Hardeman County Sheriff's Deputy arrested Brian Christopher Lawler ("Decedent") for driving under the influence and other related charges. The deputy took Decedent to the Hardeman County Jail (the "Jail"). On July 28, 2018, while incarcerated at the Jail, Decedent committed suicide. Plaintiff alleges Defendants were deliberately indifferent to Decedent's serious medical needs by failing to provide adequate medical/mental health care to Decedent.

On September 27, 2021, Jim Ross provided a letter to counsel for Plaintiff regarding Decedent. In this letter, Ross explains his employment history with World Wrestling Entertainment ("WWE") and All Elite Wrestling ("AEW"), as well as his relationship with Decedent. Ross notes that he both signed Decedent as a wrestler for WWE and terminated Decedent therefrom. Ross states that he made "clear to Brian that he needed to find his sobriety before he would be welcome back to our profession in any capacity." Ross further states the following pertaining to the potential candidacy of Decedent for a position with AEW:

> If Brian had been able to remain sober and active in a recovery program, he would have been a successful broadcaster just like his father. I can state with certainty that I would have hired a sober Brian Lawler for this type of job. While there would have been no ceiling to how much Brian could have made as a wrestling broadcaster, I am confident that his compensation would have started off at $150,000 per year and that he would have made in excess of $300,000 after proving himself during his first few years of work. There is no mandatory retirement age in broadcasting and Brian likely would have been able to work into his 70s like his father had [he] not died at such a young age.

On October 27, 2021, Plaintiff disclosed George A. Barrett as a proposed expert. At that time, Plaintiff provided Defendants a copy of the "Preliminary Economic Analysis of the Present Value of Lost Earnings in the Case of Brian Lawler" of George A. Barrett (hereinafter, the "Report"). In his Report, Mr. Barrett provides that Decedent's anticipated lost earnings "are based upon the September 27, 2021 letter provided by Jim Ross." Moreover, Barrett assumes Decedent would have become "employed as a broadcaster by January 1, 2022." The Report concludes that "[b]ased upon the facts and assumptions, the present value of lost earnings [for Decedent] is $2,189,089."

## STANDARD OF REVIEW

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 applies to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999). Trial courts perform a "gatekeeping role" when considering the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 597. The Court's gate-keeping role is twofold: first, the Court must determine whether the testimony is reliable; second, the Court must determine whether the testimony is relevant. *Daubert.*, 509 U.S. at 590-91. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000)) (quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## ANALYSIS

Defendants move to exclude Barrett's testimony on the basis that his Report is unreliable. Specifically, they argue 1) the underlying data on which the Report is based are speculative, and 2) the calculations used to reach his estimate of Decedent's potential lifetime earnings are unreliable. The Court finds it need not reach the second issue Defendants raise because they are correct on their first point.

*Daubert* provides four non-exhaustive factors courts should consider when deciding whether scientific testimony is reliable: 1) whether a theory or technique can be (and has been) tested, 2) whether the theory or technique has been subjected to peer review and publication, 3)

3

the known or potential rate of error, and 4) general acceptance. *Daubert*, 509 U.S. at 593-94. However, in the case of nonscientific expert testimony, the Court's analysis may focus upon the expert's personal knowledge or experience because the *Daubert* factors often "cannot readily be applied to measure the reliability of such testimony." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F. 3d 288, 295 (6th Cir. 2007). An expert's testimony must be based on "more than subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 590.

In cases involving future lost wages of a deceased person, "an expert may reasonably depart from historical earnings patterns in light of changed circumstances that occurred prior to the injury but were not yet reflected in the Plaintiff's actual salary." *Andler v. Clear Channel Broadcasting*, 670 F.3d 717, 727 (6th Cir. 2012). However, "[d]epartures from actual pre-injury earnings must be justified and cannot be unduly speculative." *Id.* "Such testimony should be excluded if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Id.* (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). "In *Boucher*, for example, the court held that an expert's figures for pre-injury earning capacity based on full-time employment, fringe benefits, and annual raises should have been excluded because the plaintiff's actual employment history had been 'seasonal and intermittent.'" *Id.*

Defendants take issue with four facts that Ross's letter states or assumes: 1) Decedent could maintain his sobriety, 2) Ross had authority to hire Decedent, 3) the compensation rates AEW would have provided Decedent had he been hired, and 4) the eventual pay raises Decedent would have received if he "prov[ed] himself during the first few years of work." Given his 25-plus years of experience in the wrestling industry, Ross likely has the sort of personal knowledge and experience to testify as to whether a given person could have been hired for a wrestling broadcaster role and what sort of compensation that person could have expected, and that would thus be proper

4

evidence upon which Barrett could base his Report.[1]  However, Ross's testimony that Decedent could have been hired at his estimated salary rests on the assumption that Decedent would have stayed sober, and that assumption is "unsupported speculation" upon which Barrett cannot properly base his Report.  Ross's letter explicitly states that Decedent "needed to find his sobriety before he would be welcome back to our profession in any capacity."  In fact, Ross himself fired Decedent from the WWE because of his struggles with drugs and alcohol.  Decedent's addiction issues are well-documented, yet Plaintiff points to no evidence that he would have moved past those issues or that he was even trying to do so.  In fact, Decedent was arrested on suspicion of driving under the influence and other related charges three weeks before he died and was in jail awaiting disposition of those charges when he died.  Ross's assumption that Decedent would have stayed sober is therefore "unsupported speculation" and his salary estimate upon which Barrett bases his Report is unreliable.

For the foregoing reasons, the Motion is **GRANTED**.

**IT IS SO ORDERED.**

                                           **s/ S. Thomas Anderson**
                                           S. THOMAS ANDERSON
                                           CHIEF UNITED STATES DISTRICT JUDGE
                                           Date: October 5, 2022.

---

[1] The Court recognizes this might be expert testimony.  However, Defendants do not object on the basis that Ross's testimony would be improper opinion testimony, and the Court therefore does not reach that issue.